**17 PAGES**
Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:   (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com

Counsel for Brickton LP
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>BRICKTON LP,<br><br>    Debtor-in-Possession. | Case No. 24-23724 - B<br><br>DCN FH-3<br><br>Chapter 11<br><br>**DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF REORGANIZATIONOF BRICKTON LP (DATED MARCH 11, 2025)**<br><br>**Date:**  March 25, 2024<br>**Time:**  11:00 AM<br>**Dept**:  B<br>**Place:**  Courtroom 32, 501 I Street, Sacramento, CA |

*THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF BANKRUPTCY CODE § 1125. IF YOU HAVE REQUESTED AND RECEIVED A COPY OF THE DISCLOSURE STATEMENT IN CONNECTION WITH THE COURT HEARING TO CONSIDER APPROVAL OF THE DISCLOSURE STATEMENT, NOTHING CONTAINED HEREIN IS OR WILL BE DEEMED A SOLICITATION OF ACCEPTANCE OF THE PLAN OF REORGANIZATION FILED BY THE DEBTOR.*

Table of Contents

I. INTRODUCTION AND PLAN OVERVIEW ................................................................. 3
   A. Executive Summary ............................................................................................. 3
   B. Purpose of this Disclosure Statement .................................................................. 3
   C. Information Regarding the Plan .......................................................................... 4
      1. Exclusive Source of Information .................................................................. 4
      2. Plan Governs Disclosure Statement .............................................................. 4
      3. Tax Consequences ......................................................................................... 4
   D. Voting Instructions ............................................................................................... 4
      1. Who May Vote .............................................................................................. 4
      2. How to Vote .................................................................................................. 5
      3. How Votes are Counted ................................................................................ 5
II. OVERVIEW OF THE BANKRUPTCY CASE ............................................................. 5
   A. Events Leading to the Bankruptcy Case .............................................................. 5
   B. Significant Post-Petition Developments .............................................................. 7
III. VALUATION OF ASSETS AND LIQUIDATION ANALYSIS ............................... 8
   C. Value of Real Property Asset ............................................................................... 8
   D. Liabilities ............................................................................................................. 8
   E. Liquidation Analysis ............................................................................................ 9
IV. PLAN SUMMARY ......................................................................................................... 10
   A. Means for Implementation of the Plan .............................................................. 10
   B. Claims, Interests and Distributions. .................................................................. 11
      1. Classes of Claims and Interests ................................................................... 11
      2. Unclassified Claims .................................................................................... 11
   C. Executory Contracts and Unexpired Leases ...................................................... 12
   D. Releases and Exculpations ................................................................................. 13
   E. Conditions to Effectiveness of Plan. .................................................................. 13
   F. Retention of Jurisdiction by the Bankruptcy Court ........................................... 13
   G. Post-Confirmation Issues. .................................................................................. 14
      1. Preservation of Claims and Defenses ......................................................... 14
      2. Administrative Claim Bar Date .................................................................. 15
V. CONFIRMATION OF THE PLAN .............................................................................. 15
   A. Best Interests of Creditors .................................................................................. 15
   B. Feasibility ........................................................................................................... 16
VI. CONCLUSION ............................................................................................................... 16

## I. INTRODUCTION AND PLAN OVERVIEW

### A. Executive Summary

Debtor-in-Possession Brickton LP ("Debtor") filed this Bankruptcy Case to allow more time to finalize a refinancing of Debtor's secured loans from Stearns Bank, or to provide time for a sale to pay off the secured debt and recover significant value for the estate. As a result of the lingering impacts of Covid on Debtor's assisted care facility, Debtor fell behind in its payments on the loans. Stearns Bank declared the Loans in default and was proceeding to enforce its security interest through a State Corut Action. Debtor and Stearns Bank have now reached a forbearance agreement (the "Forbearance Agreement") which will allow the Debtor until December 31, 2025 (the "Payoff Deadline") to pay off the loans through either a refinancing or sale of the Debtor's property. Debtor has been actively pursuing both alternatives for several months and is confident it will be able to meet the Payoff Deadline. The Forbearance Agreement requires its terms be effectuated through a confirmed plan of reorganization in this Bankruptcy Case. As set forth in more detail below, Debtor anticipates the Forbearance Agreement and Plan will allow it to pay its creditors in full.

### B. Purpose of this Disclosure Statement

This document is the Disclosure Statement (the "Disclosure Statement") to the Debtor's proposed Plan of Reorganization (the "Plan"). The Plan describes in detail the treatment of creditors and classes of creditors in this case. The purpose of this Disclosure Statement is to provide creditors and parties in interest with sufficient information to allow them to make a reasonable, informed decision on whether to accept the Plan. The Disclosure Statement summarizes the Plan and also contains additional background information including: (1) the history, business, results of operations, management, and liabilities of the Debtor; (2) significant events during this Bankruptcy Case; and (3) the assets that are available for distribution under the Plan. For the sake of brevity, certain words below are capitalized and shall have the same meaning as set forth in the definitions section of the Plan.

C. Information Regarding the Plan

 1. Exclusive Source of Information

Debtor has made every effort to present the information in this Disclosure Statement accurately and fairly and believes that the information is accurate to Debtor's best of ability. Pursuant to the requirements of the Bankruptcy Code, this Disclosure Statement has been presented to and approved by the Court as containing adequate information. Approval of this Disclosure Statement by the Court does not, however, constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered by the Plan. The material contained in this Disclosure Statement is intended solely for evaluation of the Plan and solely for the use of known creditors and, accordingly, may not be relied upon for any purpose other than the determination of how to vote on the Plan. No representations concerning the Debtor or the value of the Debtor's property are authorized other than as set forth in this Disclosure Statement.

 2. Plan Governs Disclosure Statement

Although the Debtor believes that this Disclosure Statement accurately describes the Plan, all summaries of the Plan contained in this Disclosure Statement are qualified by the Plan itself which is controlling.

 3. Tax Consequences

*The tax consequences of the Plan and Distribution thereunder will vary based on the individual circumstances of each holder of a Claim or Interest. Accordingly, each Creditor and Limited Partner is strongly urged to consult with its own accountants, attorneys and/or advisors. This summary is for general information purposes only and does not constitute legal or tax advice.*

D. Voting Instructions

 1. Who May Vote

Classes of Claims which are impaired by the Plan are entitled to vote. A Class that is not "impaired" under a plan is conclusively presumed to have accepted the plan. A Class is impaired if legal, equitable or contractual rights attaching to the claims or interest of the Class are

DISCLOSURE STATEMENT　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　4

modified, other than by curing defaults and reinstating maturities. Holders of Allowed Claims in Class 1A, Class 1B, and Class 2 are impaired and entitled to vote on the Plan.

   2. How to Vote

Detailed instructions regarding how to vote on the Plan are contained in the ballots to be distributed with this Disclosure Statement after approval by the Court. To be counted as votes to accept or reject the Plan, each ballot must be properly executed, completed, and delivered in accordance with the instructions provided such that a vote cast is actually received by the attorneys for the Debtor before the Voting Deadline (as specified on the ballot).

If your ballot is damaged or lost, you may request a replacement by contacting the attorneys for the Debtor. You should contact Debtor's attorneys if you have any questions about the solicitation or voting process. Please note that all ballots that are received after the Voting Deadline or are otherwise not in compliance with the voting instructions will not be counted except as determined by the Debtor as the Plan proponent.

   3. How Votes are Counted

Voting is tabulated by Class. In order for the Plan to be accepted by a Class of Claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims in such Class who vote on the Plan must vote for acceptance. If a Class of creditors or interests votes to reject the Plan, the Plan may nevertheless be confirmed by the Bankruptcy Court if certain additional statutory requirements are met by the Plan. This is called a "cram down." If necessary, the Debtor is prepared to seek confirmation of the Plan through a cram down.

II. **OVERVIEW OF THE BANKRUPTCY CASE**

  A. <u>Events Leading to the Bankruptcy Case</u>

Debtor's primary asset is a residential care facility for the elderly (commonly referred to as a "RCFE" by the applicable state regulators) located at 2551 Cameo Drive, Cameron Park, California (the "Real Property"). The Property has 34 units with 67 beds plus common areas.

The building is approximately 17,000 square feet on one acre of real property. It is a highly specialized and regulated type of commercial real property.

Debtor does not operate the Real Property. Instead, the Property is leased to Cameo RCFE, Inc., dba New Haven West II ("Cameo RCFE"), which is licensed by the State of California to operate an assisted living and adult daycare program on the Property. Cameo RCFE has continuously operated the assisted living facility on the Property since 2003, prior to Debtor's acquisition of the Property. Those operations were quite successful for many years and Cameo RCFE became known as El Dorado County's premier assisted living and adult care facility.

Debtor and Cameo RCFE are related corporate entities. Debtor was formed in 2015 to hold the Property in conjunction with a Small Business Administration ("SBA") backed loan made by Stearns Bank. Cameo RCFE is, as the SBA Notes issued by Stearns Bank reflect, the "Operating Company" working in conjunction with Debtor. Cameo RCFE is also Debtor's General Partner and holds a 1% interest in the Debtor. Stearns Bank extended two SBA backed loans jointly to Debtor and Cameo RCFE—one issued on February 13, 2015 (the "2015 Loan") and the second issued on September 14, 2016 (the "2016 Loan" and, together with the 2105 Loan, the "Loans"). The total principal amount of the Loans at their inception was $5,039,100.

There were no issues with the Loans or Debtor's operations until the Covid pandemic hit in 2020. Like most RCFEs licensed by the California's Department of Health and Community Services, Debtor's and Cameo RCFE's operations were severely impacted by the Covid pandemic. Although it has taken years, those business operations have now slowly stabilized. Unfortunately, in the interim, Debtor and Cameo RCFE fell behind in the payments owing under the Loans. The parties actively discussed options to refinance and/or restructure the debt, but were unable to reach a resolution. In May 2024, Stearns Bank filed Notices of Default as to the Loans noting a $121,357.31 past due balance on the 2015 Loan and a $124,230.50 past due balance owing on the 2016 Loan. Shortly thereafter, Debtor filed this Bankruptcy Case.

Docusign Envelope ID: E184FF64-975A-4CC4-B5E2-198EB149C19D

B. <u>Significant Post-Petition Developments</u>

Since the August 21, 2024 Petition Date, Debtor has continued its discussions with its Stearns Bank, with the goal of a mutually agreeable exit path for this case. Debtor actively explored the options of both refinancing its Loans and the potential sale of the Real Property. Concurrently with these efforts, Debtor addressed two motions brought by Stearns Bank.

First was a motion to have this case designated as "Single-Asset Real Estate" bankruptcy ("SARE"). Such as designation imposes additional requirements and a shorter period for action by the Debtor—including expedited post-petition payments to a secured creditor—under the Bankruptcy Code. While the Real Property is not the type of property usually subject to a SARE designation, Debtor chose not to oppose the motion and filed a statement of non-opposition. The Court entered an order designating the case as SARE bankruptcy on October 9, 2024.

Two days later, Stearns Bank filed a motion seeking the appointment of a Chapter 11 Trustee in this case (the "Trustee Motion"). The Trustee Motion alleged Debtor's president, Joel Matkovich, had conflicts of interest arising from (1) his partial ownership of both Debtor and Cameo RCFE and (2) his personal guaranty of both Loans. Debtor opposed the Trustee Motion, noting that both these conditions were required elements of the Loans. Debtor also argued it must first be given the opportunity, allowed under the Bankruptcy Code, to formulate a plan of reorganization. Without such an opportunity, Stearns Bank's arguments as to what Debtor might do or fail to do—because of an alleged conflict—were premature. The Court continued the hearing on the Trustee Motion and required further briefing by the parties as to licensing issues potentially applicable to the operation of the Real Property. On January 16, 2025, the Court entered an order denying the Trustee Motion.

DISCLOSURE STATEMENT 7

In the interim, Debtor also brought its own motion to extend its time to formulate and circulate a proposed Plan of Reorganization on December 18, 2024 (the "Exclusivity Motion"). In light of the SARE designation, the deadline for Debtor's submission of a proposed plan would have been December 19, 2024. Debtor noted it had tried unsuccessfully to reach an agreement with Stearns Bank and needed additional time to formulate a plan without such support. On January 15, 2025, the Court entered an order granting the Exclusivity Motion and extending the deadline for Debtor to file a plan to April 18, 2025.

Discussions between Debtor and Stearns Bank continued and the parties were finally able to reach a resolution. A Forbearance Agreement was recently executed and is submitted as Exhibit 1 to the Plan. Under this agreement, Debtor is allowed until December 31, 2025 to pay off the Loans through either a refinancing or sale of the Real Property. In the interim, Debtor will make monthly principal and interest payments to Stearns Bank under modified terms. As a condition to the Forbearance Agreement, Stearns Bank required Debtor to incorporate its terms into the current Plan.

**III.    VALUATION OF ASSETS AND LIQUIDATION ANALYSIS**

  C. <u>Value of Real Property Asset</u>

Debtor values the Real Property and Related Assets at $8.0 million. This valuation is supported by Stearns Bank's March 2024 appraisal at $7.3 million with subsequent adjustments. Debtor's Bankruptcy Schedules reflect this value, and no party has opposed that valuation. Debtor's only other significant asset is its account receivable owing from Cameo RCFE for past rents owing under the Lease between the parties. The current balance on that account receivable is approximately $475,000.

  D. <u>Liabilities</u>

Below is summary of all claims against the Debtor's Bankruptcy Estate. A timely filed proof of claim replaces any scheduled claim of the same liability listed in Debtor's Bankruptcy

Schedules. No proof of claim was filed for the scheduled claims listed below and, for that reason, the claim is listed as scheduled by Debtor.

**Table 1 – Debtor's Liabilities**

| Claim / Sch | Claimant | Total Claim Amount | Secured Claim | Priority Claim | Unsecured Claim | Notes |
|---|---|---|---|---|---|---|
| 1 | Franchise Tax Board | $0.00 | -- | -- | -- | 2023 and 2024 Partnership taxes; Listed as "TBD" |
| 2 | Stearns Bank | $2,256,637.43 | $2,256,637.43 | -- | -- | 2015 Loan |
| 3 | Stearns Bank | $2,406,699.01 | $2,406,699.01 | -- | -- | 2016 Loan |
| 4 | IRS | $4,305.00 | -- | $3,600.00 | $705.00 | Estimated 2024 taxes of $3,600 and $705.00 penalty for 2023 |
| 5 | El Dorado County | $21,268.65 | -- | $21,268.65 | -- | Property taxes |
| Sch 2.1 | El Dorado County | $1,756.58 | -- | $1,756.58 | -- | Unsecured Property taxes |
| Sch 3.1 | Cameo RCFE | $21,954.00 | -- | -- | $21,954.00 | Advances for Debtor's expenses |
| Sch 3.2 | Joel Matkovich | $20,000.00 | -- | -- | $20,000.00 | Advances for Debtor's expenses |
| Sch 3.3 | Mohammad Walizadeh, Hanson Bridgett | $0.00 | - | -- | $0.00 | Legal fees |
|  |  | $4,732,620.67 | $4,663,336.44 | $26,625.23 | $42,659.00 |  |

E. <u>Liquidation Analysis</u>

Below is an estimated value of Debtor's assets in an orderly wind down in a Chapter 7 liquidation case net of payments to secured claims. If a Chapter 7 Trustee closes the business and

DISCLOSURE STATEMENT                                                                                          9

conducts a forced liquidation, Debtor believes the recoveries would be significantly lower. Cameo RCFE would also likely have a significant claim against the Chapter 7 Bankruptcy Estate for termination of its lease of the Real Property. In a Chapter 7 liquidation, it is unlikely any net proceeds would be available to pay any claims other than the secured claims of Stearns Bank.

**Table 2 – Liquidation Analysis**

| Asset | Assumptions for Orderly Liquidation Value | Orderly Liquidation Value |
|---|---|---|
| Real Property and Related Assets | 25% discount for non-operating asset/liquidation sale<br>10% deduction for costs of sale (broker/marketing)<br>10% deduction for Chapter 7 Trustee Statutory Fees and attorneys' fees and costs | $4,400,000.00 |
| Accounts Receivable | Roughly $475,000 A/R owing by Cameo RCFE would likely be subject to offset of substantial lease termination claim and would unlikely be unrecoverable because Cameo RCFE would likely cease operations. | $0 |
| Cash Collateral | Approximate current balance in sole bank account | $2,700.00 |
|  |  | **$4,402,700.00** |

Claims by Stearns Bank (Secured by all Assets noted above)     ($4,663,336.44)

Deficiency Claim by Stearns Bank in Liquidation
  (Claims – Orderly Liquidation Value)     $260,636.44

Estimated Net Amount Available for Priority
  and General Unsecured Claims     $0.00

## IV. PLAN SUMMARY

### A. Means for Implementation of the Plan

The Plan contemplates Debor will make the monthly payments from its ongoing operations, and either refinance or sell the Real Property and Related Assets by the Payoff Deadline of December 31, 2025. Debtor has actively explored both options for several months now and has prospects lined up for either alternative path. Debtor's ability to complete one of these two alternative paths is facilitated by the agreement of Stearns Bank, under the

Forbearance Agreement, to (1) allow additional limited time through the Payoff Deadline to complete these tasks and (2) modify the interim payments owing during the Forbearance Period.

B. *Claims, Interests and Distributions.*

1. *Classes of Claims and Interests*

The Plan divides Creditors into four classes. Creditors with similar Claims are placed in the same Class. There is one additional Class comprised of Interest holders under the Plan, which is designated as Class 3. Classes 1A,1B, and 2 are impaired under the Plan and, therefore, holders of Claims in those Classes are entitled to vote. Class 3 is unimpaired.

Class 1A consists of the Secured Claim of Stearns Bank related to the 2015 Loan and identified as Claim 2 in Table 1 above. Class 1B consists of the Secured Claim of Stearns Bank related to the 2016 Loan and identified as Claim 3 in Table 1 above. Class 1A and 1B will be paid in full on or before the Payoff Deadline through either a sale of the Real Property or a refinancing of the Loans. In the interim, Class 1A and Class 1B will receive modified monthly principal and interest payments in the amount of $19,723.40 and $20,469.67 respectively, in accordance with the Forbearance Agreement.

Class 2 consists of all Unsecured Claims as identified in Table 1 above . Holders of Allowed Class 2 Claims shall be paid in full within 30 days of the Payoff Deadline. Reorganized Debtor shall have until 60 days after the Effective Date to object to the allowable amount of Class 2 Claims.

Class 3, as noted above, consists of the Interest held by each Limited Parter of the Debtor. Limited Partners shall retain all of their interests and all of their legal and equitable rights with respect to such interests. Provided however, no holder of an interest in Class 3 shall receive any dividends or any other form of distribution on account of such interest from the Reorganized Debtor until all creditors have been paid in full.

2. *Unclassified Claims*

Administrative Claims, Professional Claims, Post-Petition Tax Claims, Post-Petition U.S. Priority Tax Claims, and Post-Petition U.S. Trustee Fees are not classified for Plan purposes. Holders of these claims are also not entitled to vote on the Plan. All such Claims are instead

treated separately in accordance the requirements set forth in Section 1129(a)(9) of the Bankruptcy Code.

Holders of Administrative Claims will either be paid in full on the Effective Date of the Plan or when their Claim is allowed, if allowed after the Effective Date. No payments shall be made to junior priority Unsecured Creditors, including Allowed Priority Claims, until all Allowed Administrative Claims are either fully paid for, or if disputed, fully reserved for.

Only one Professional has been employed by Debtor in this Bankruptcy Case—its Bankruptcy Counsel, Finestone Hayes LLP (the "Debtor's Attorneys"). Debtor's Attorneys will file an application for compensation with the Bankruptcy Court for its fees and costs incurred through the Effective Date. The Reorganized Debtor shall pay the amount awarded by the Bankruptcy Court pursuant to Section 330 of the Bankruptcy Code on account of a Professional Claim promptly after the order approving such payment becomes a Final Order, unless the Reorganized Debtor and the applicable professional agree otherwise.

The Reorganized Debtor shall pay or reserve for and pay Post-Petition Tax Claims without the requirement that a motion to approve an Administrative Claim be filed by the applicable taxing authority by the Administrative Claims Bar Date. The Reorganized Debtor shall not make any payments to Allowed General Unsecured Claims or any Priority Claims until all Post-Petition tax claims are either paid or fully reserved for.

Holders of Priority Tax Claims, unless the holder of such Claim has agreed to a different treatment, shall receive deferred cash payments with interest as permitted by section 1129(a)(9) of the Bankruptcy Code. Allowed Priority Tax Claims will be paid in full concurrently with the Payment of Class 1A and Class 1B Secured Claims by the Payment Deadline.

Post-Petition U.S. Trustee Fees that are payable through the Effective Date under 28 U.S.C. § 1930(a)(6), as determined by the Court, shall be paid in full on the Effective Date or when due.

C. <u>Executory Contracts and Unexpired Leases</u>

Under section 365 of the Bankruptcy Code, a debtor may assume or reject executory contracts and unexpired leases. Pursuant to the Plan, Debtor assumes its unexpired Lease of the

Real Property to Cameo RCFE effective as of the Confirmation Date, and shall perform all obligations thereunder, both pre-confirmation and post-confirmation. Theres is no cure amount required under section 365, as Debtor is the lessor under the Lease. The Lease is the only executory contract/unexpired lease scheduled or known by Debtor. Upon the Confirmation Date, Debtor will be conclusively deemed to have rejected any executory contracts and/or unexpired leases that may exist other than the Lease.

D.   Releases and Exculpations

Debtor will receive a discharge and the Plan proposes to limit the liability of the Reorganized Debtor for errors of judgment made in good faith other than because of gross negligence. The Plan provides that confirmation of the Plan will discharge the Debtor in Possession of all prepetition claims, except the obligations of the Reorganized Debtor under the Plan and grants a Plan injunction against all entities who have held, hold, or may hold Claims against or Interests in the Debtor in Possession or the Estate that arose prior to the Effective Date for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any Claim or demand against the Retained Assets.

E.   Conditions to Effectiveness of Plan.

The Plan will not become Effective unless and until the Bankruptcy Court has entered the Confirmation Order approving the Plan in all respects. The Effective Date of the Plan will be the earlier of: (1) the date upon which Debtor files a notice of Effective Date or (2) the 15th day after the Confirmation Date provided that the Court may extend this 15-day period for cause shown.

F.   Retention of Jurisdiction by the Bankruptcy Court.

The Plan will in no way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court will retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases or the Plan, or (iii) that relates to the following:

(a)   To administer, interpret or enforce the Plan;

(b) To hear and determine any and all adversary proceedings, contested matters, claim objections, motions or applications pending on or filed after the Effective Date;

(c) To hear and determine any and all applications by professionals for an award of Post-Petition professional fees, and to consider and rule upon the final fee applications of the professionals as provided in this Plan, and/or to resolve any disputes respecting professional fee applications;

(d) To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(e) To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(f) To approve any compromise and settlements and/or abandonments of claims against third parties, and/or the abandonment of any Retained Asset, for which the Plan requires approval, or which the Reorganized Debtor and its bankruptcy counsel believe should be noticed to Creditors;

(g) To approve, if requested, any Post-Effective Date sales of assets, including the potential sale of the Real Property prior to the Payment Deadline as contemplated in the Plan, pursuant to section 363 of the Bankruptcy Code;

(h) To issue an injunction or injunctions post-confirmation pursuant to section 105 of the Bankruptcy Code upon a proper showing;

(i) To close the Chapter 11 Case when warranted and, when administration of the Case has been completed, to enter a discharge of the Reorganized Debtor; and

(j) To enter an order or orders reopening the Case as appropriate.

G. Post-Confirmation Issues.

*1. Preservation of Claims and Defenses*

Debtor shall retain all known and unknown claims against all third parties of any kind and nature (the "Retained Claims and Defenses"). Confirmation of the Plan affects no settlement, compromise, waiver, or release of any of the Retained Claims and Defenses unless the Plan or

Confirmation Order specifically and unambiguously so provides, or unless such settlement, compromise, waiver, or release was or is approved by the Court prior to the Effective Date.

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor may enforce all rights to commence and pursue any and all of the Retained Claims and Defenses, including to commence, prosecute, or settle any such Retained Claims and Defenses after the Effective Date. No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim or cause of action against it as an indication that the Reorganized Debtor will not pursue any and all available Retained Claims and Defenses (as applicable) against it.

2. *Administrative Claim Bar Date*

The Plan establishes various deadlines and bar dates, including the Administrative Claim Bar Date, which is 45 days after the Effective Date, as well as a bar date by which any party holding a Claim as a result of the rejection of an executory contract must file a proof of Claim within 30 days after the Effective Date, or such Claims shall be disallowed without the need for objection.

V. **CONFIRMATION OF THE PLAN**

A. <u>Best Interests of Creditors.</u>

Debtor believes that confirmation of the Plan is in the best interest of the holders of Claims and Interests. Under the Plan, the holders of impaired Claims will receive distributions having a present value as of the Effective Date of not less than the value such holders would likely receive (as set forth in Table 2 above) if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Plan anticipates payment in full of all Allowed Claims and retention of all Interests by the Limited Partners. Debtor believes that the holders of Claims would realize less value if the case were converted to a Chapter 7 case at this point. Conversion would create unnecessary additional administrative expenses, which would, in turn, reduce funds available to satisfied Allowed Claims. Through the Plan and the Forbearance Agreement, Debtor is allowed the additional time needed to effectuate a refinancing or sale of the Real Property. In return, Stearns Bank is given both interim payments and a date certain by which its Loans will be

resolved. Other Creditors will, in turn, received payment in full of their Allowed Claims in the order dictated by the Absolute Priority Rule of the Bankruptcy Code.

B.  Feasibility.

In order to confirm a plan, the Bankruptcy Code requires the Bankruptcy Court to find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the debtor, unless that liquidation is contemplated by the plan ("Feasibility Test"). Debtor believes that the Plan meets the Feasibility Test. Debtor has already been servicing monthly interest-only payments of $36,371.31 to Stearns Bank for four months Post-Petition. Through the Plan and Forbearance Agreement, the monthly principal and interest payments to Stearns Bank will total $40,193.07 —roughly 10% more than current payments. This is also a reduced monthly amount negotiated by Debtor, as part of the Forbearance Agreement, to ensure that Debtor would comfortably be able to make such required payments during the Forbearance Period.

In the unlikely event that Debtor is unable to either refinance or sell the Real Property by the Payoff Deadline, then the Plan provides immediate relief to Stearns Bank. Any further liquidation or financial reorganization efforts are eliminated through the Stipulated Judgment given as a condition to the Forbearance Agreement. The Plan provides finality for all parties.

VI.  CONCLUSION

You are urged to carefully read the contents of the Disclosure Statement and Plan, and make further inquiries as you may deem appropriate, before making a decision to accept or reject the Plan. Debtor believes the Plan provides the best solution for all the Creditors, the Limited Partners, and the Debtor, and thus should be confirmed.

Dated: March 10, 2025                    BRICKTON LP



By: _____  3/10/2025
    Joel Matkovich, President

DISCLOSURE STATEMENT                                              16

Dated: March 11, 2025        FINESTONE HAYES LLP

By: /s/ Stephen D. Finestone
Stephen D. Finestone
Counsel for Brickton LP, Debtor-in-Possesssion